UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
08-CV-1173(JMR/RLE)


Save Lake Superior Association  )
et al.  )
  )     ORDER
       v.  )
  )
Janet Napolitano, Secretary of the )
U.S. Department of Homeland  )
Security and the U.S. Department  )
of Homeland Security; Admiral  )
Thad W. Allen, Commandant of the  )
United States Coast Guard and the  )
U.S. Coast Guard; Tom Vilsack,  )
Secretary of the U.S. Department  )
of Agriculture and the U.S.  )
Department of Agriculture; Cindy  )
Smith, Administrator of the Animal )
and Plant Health Inspection  )
Service; and the Animal and Plant  )
Health Inspection Service[1]  )


Plaintiffs ask the Court to dive into a prophylactic effort to protect Lake Superior.  Defendants deny the Court is presently empowered to do so.  They are correct.  Defendants' motion to dismiss is granted.

I.  <u>Background</u>

Plaintiffs are four environmental organizations.  They believe the fish of Lake Superior may be vulnerable to the deadly viral hemorrhagic septicemia virus ("VHSV").  So far as is known to either the Court or the parties, the virus is not present in Lake Superior.

---

[1] Successors in office at the Department of Homeland Security and the United States Department of Agriculture are automatically substituted pursuant to Fed. R. Civ. P. 25(d).

On April 29, 2008, plaintiffs sued officials and agencies of the United States, including the Department of Homeland Security and its Secretary, the United States Coast Guard and its Commandant, the United States Department of Agriculture and its Secretary, and the Animal and Plant Health Inspection Service ("APHIS") and its Administrator. Their complaint seeks declaratory and injunctive relief, ordering defendants to enforce and implement certain federal environmental statutes and regulations.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rules 12(b)(1) and 12(h) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). They also deny plaintiffs possess standing to bring this case.[2]

II. <u>Analysis</u>

A. <u>Subject Matter Jurisdiction</u>

The Court always begins by examining its jurisdiction, because "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction." <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994). Accordingly, plaintiffs, having asserted the Court's

---

[2] Defendants also argued plaintiffs failed to effect proper service on the Attorney General, requiring dismissal for lack of personal jurisdiction. In response, plaintiffs submitted evidence that the Attorney General was properly served. Defendants did not address this argument in their reply brief. The Court deems this argument abandoned.

jurisdiction, bear the burden of establishing it. <u>Id.</u> Defendants deny Congress has authorized these claims, leaving the Court without jurisdiction.

### 1. <u>Mandamus and Declaratory Judgment Claims</u>

In Count I, the complaint asserts the Coast Guard and APHIS "have failed to enforce" federal regulations and orders, in violation of the Minnesota Environmental Rights Act, Minn. Stat. § 116B.01 et seq. ("MERA"). (Compl. ¶ 31.) Plaintiffs suggest subject matter jurisdiction is conferred by federal statutes governing mandamus and declaratory judgment. (Compl. ¶ 6.) A glance at the mandamus statute might suggest it does so. <u>See</u> 28 U.S.C. § 1361. The same cannot be said for the declaratory judgment statute. <u>See</u> 28 U.S.C. §§ 2201-2202; <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671-72 (1950).

But a cursory glance does not suffice; in a suit against the sovereign, more is needed. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983). In order to maintain a suit against the United States, a court must find a waiver of sovereign immunity "unequivocally expressed in statutory text," and its scope must be strictly construed in favor of the sovereign. <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996).

3

Here, plaintiffs face an insurmountable hurdle.  Neither the mandamus statute nor the declaratory judgment statute waives sovereign immunity.  Essex v. Vinal, 499 F.2d 226, 231-32 (8th Cir. 1974); Skelly Oil Co., id.  Plaintiffs do not claim Congress agrees MERA, a Minnesota statute, has conferred power to sue federal departments and agencies.  They argue, instead, the Republic cannot resort to sovereign immunity, because - as they claim the United States has failed to enforce the law - defendants are acting ultra vires.  (Pl. Mem. at 8-10.)  Plaintiffs attempt to support this proposition by advancing the cases of Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 689 (1949), and State of Minnesota v. Callaway, 401 F. Supp. 524, 528 (D. Minn. 1975), reversed in part by State of Minnesota v. Hoffman, 543 F.2d 1198, 1209 (8th Cir. 1976).  Plaintiffs' reliance on these cases is unavailing.

In Larson, the Supreme Court found a suit barred by sovereign immunity when the United States had not assented to the action.  Larson, 337 U.S. at 689.  But in what has become known as the "Larson-Dugan exception"[3] to sovereign immunity, the Supreme Court also recognized that:

> [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions.  The officer is not

---

[3]So named for the case of Dugan v. Rank, 372 U.S. 609, 621-22 (1963).  See Al-Jabari v. Chertoff, 536 F. Supp. 2d 1029, 1033 (D. Minn. 2008) (Schiltz, J.).

> doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.

Id. This carefully-crafted exception does not complete the inquiry, however, because the Court was explicit: "relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient." Id. at 690. Therefore, the Court added, in order to support an ultra vires claim, "it is necessary that the plaintiff set out in his complaint the statutory limitation on which he relies." Id.

Such a claim was made in this District in Callaway. There, plaintiffs argued the federal Clean Water Act obliged the Army Corps of Engineers to comply with Minnesota environmental regulations when dredging the Mississippi River. Plaintiffs, there, identified the federal statute - the Clean Water Act - they claimed mandated the Corps' actions, and specified the statutory sections claimed to limit its power. Their claim found support in the Clean Water Act's legislative history, where Congress intended to waive sovereign immunity. See Callaway, 401 F. Supp. at 528. In that case, the district court found plaintiffs had sufficiently alleged ultra vires acts, and held sovereign immunity did not bar the suit. Id. Even with all this support, the Eighth Circuit

reversed.[4]

The case at bar is not as strong as <u>Callaway</u>. Plaintiffs offer no federal statute which hints defendants are required to comply with MERA.  In the present case, defendants are not acting, they are in repose.  Indeed, plaintiffs claim defendants' inaction is the reason for their case.  This contrasts with <u>Callaway</u>, where the Corps was dredging, and plaintiffs claimed they were doing so without permission.  As such, this case lacks any suggestion defendants are taking affirmative actions exceeding their mandate. This is not a claim of defendants acting beyond their power; rather, it is a claim they have erred in its exercise.  Such a claim is barred by sovereign immunity.

Absent a waiver of sovereign immunity within the text of a federal statute, this Court cannot exercise jurisdiction over Count I's subject matter.  Plaintiffs' claims premised on violations of MERA are dismissed.

### 2. <u>Administrative Procedure Act Claims</u>

Counts II and III allege the Coast Guard and APHIS, respectively, have arbitrarily and capriciously refused to enforce their own rules.  According to plaintiffs, the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), provides subject matter

---

[4] The Court of Appeals did not address <u>Callaway</u>'s procedural issues, including the sovereign immunity question.  It reversed the district court's holding that the Clean Water Act required the Corps of Engineers to obtain a Minnesota state dredging permit. 543 F.2d at 1209.

jurisdiction.

The APA is a limited waiver of sovereign immunity, which permits judicial review of an agency's actions or failures to act. 5 U.S.C. §§ 551(13), 706(2).  Under the APA, "the reviewing court shall compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The Act, however, contains an exception:  a court may not review "agency action committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  The agency actions - or inactions - of which plaintiffs complain fall squarely within the exception.

An agency's decision to take, or not to take, enforcement action is based on a complicated balancing of factors falling within the agency's expertise.  See Heckler v. Chaney, 470 U.S. 821, 831-32 (1985).  The Supreme Court recognized an agency "generally cannot act against each technical violation of the statute it is charged with enforcing."  Id. at 831.  Therefore, unless Congress sets standards directing the agency's discretion, its decision against enforcement in a particular situation is presumed unreviewable under the APA.  Id. at 832-33.[5]

Under Supreme Court precedents, a plaintiff seeking to rebut the presumption must identify specific statutory language

_____

[5] Plaintiffs correctly argue - involving agency action cases - there is a "strong presumption" the action is reviewable.  Heckler, 470 U.S. at 826.  But in "refusal[] to take enforcement steps," the presumption is reversed.  See id. at 831.  See also Greer v. Chao, 492 F.3d 962, 964 (8th Cir. 2007).

circumscribing the agency's discretion.  If Congress has:

> indicated an intent to circumscribe agency enforcement
> discretion, and has provided meaningful standards
> defining the limits of that discretion, there is 'law to
> apply' . . . and courts may require that the agency
> follow that law.

Id. at 834-35.  But absent such Congressionally expressed intent,
an agency's refusal to act is a decision "committed to agency
discretion by law."  Id. at 835.

### a.   The Coast Guard

Plaintiffs challenge a Coast Guard regulation requiring that
ships "minimize or avoid uptake of ballast water" in areas "known
to have infestations or populations of harmful organisms."  33
C.F.R. § 151.2035(a)(2)(i).  In plaintiffs' view, this language
"plainly means" ships are "prohibited from taking on ballast water
from the eight Great Lake States." (Pl. Mem. at 6.)  The Coast
Guard disagrees.  The APA, however, only permits the Court to
review the Coast Guard's interpretation if a federal statute
restricts the Coast Guard's enforcement discretion.  Plaintiffs run
into rocky shoals at this point.

The complaint identifies no statutory language limiting the
Coast Guard's discretion.  Plaintiffs' memorandum asks the Court to
find limiting language in the National Invasive Species Act of 1996
("NISA"), which reauthorized the Nonindigenous Aquatic Nuisance
Prevention and Control Act ("NANPCA"). (See Pl. Mem. at 17, citing
16 U.S.C. §§ 4701-4751.)

The Court has reviewed these statutory sections; none supports plaintiffs' position. Briefly summarized, section 4701(b), subsections (1) and (3), state the Act's purposes. Section 4711(a)(1) directs the Secretary to issue voluntary guidelines. Subsection (b)(1) directs the Secretary to "issue regulations to prevent the introduction and spread of aquatic nuisance species into the Great Lakes through the ballast water of vessels." Subsection (b)(1)(2)(A) specifies ships to be regulated. Subsection (e) provides for periodic review and revision of the Secretary's guidelines and regulations. Finally, Subsection (f), entitled "Authority of Secretary," provides "the regulations promulgated by the Secretary . . . shall . . . provide for the enforcement of the regulations." 16 U.S.C. § 4711(f)(2)(A)(iii).

The plain language of these NISA sections imposes no limitation on the Coast Guard's discretion to enforce its ballast water regulations. Nor does this language provide meaningful substantive standards. At most, subsection (f) provides that regulations contain an enforcement provision.[6] But none of the proffered subsections gives any direction - the "law to apply" - in assessing whether the Coast Guard has appropriately enforced its regulations. Plaintiffs cite no case, and this Court is aware of none, where a court has construed NISA and held to the contrary.

---

[6] Similarly, Subsection 4711(g), not cited by plaintiffs, provides for civil and criminal penalties in the event of regulatory violations. 16 U.S.C. § 4711(g).

The Court concludes NISA commits the enforcement of its regulations to the discretion of the Coast Guard.  Under the APA and Chaney, the Court may not review the Coast Guard's enforcement of its regulations.  Count II of the Complaint must therefore be dismissed for lack of subject matter jurisdiction.

b.  APHIS Federal Order and Interim Rule

Count III makes similar claims against APHIS, which is charged with enforcing certain regulations promulgated under the Animal Health Protection Act ("AHPA"), 7 U.S.C. §§ 8301-8320.  Like NISA, the AHPA provides civil and criminal penalties for violations.  7 U.S.C. § 8313.  The AHPA authorizes the Secretary to gather information and issue subpoenas as needed for enforcement.  7 U.S.C. § 8314.  But the AHPA contains no language limiting APHIS's enforcement discretion.

Here, plaintiffs challenge APHIS's Federal Order of October 24, 2006.  That Order was subsequently amended several times and, on September 9, 2008, was superseded by an Interim Rule effective November 10, 2008.  73 Fed. Reg. 52173-52189.

In its final incarnation before becoming an Interim Rule, the Federal Order provided:  "All international and interstate movement of VHS-susceptible species of live fish from affected or at-risk Provinces or States that is not specified as permissible by this Order is prohibited."  Amended Federal Order on Viral Hemorrhagic Septicemia (VHS), April 2, 2008, attached as Exhibit D to the

Declaration of Friedrich A. P. Siekert [Docket No. 17].  The states and Canadian provinces bordering Lake Superior are defined as at-risk areas.  Id.

Plaintiffs read the Order to prohibit all movement of live fish into Lake Superior, and assume all ballast water can be presumed to contain live fish.  APHIS, however, does not mandate this interpretation.  Indeed, the Interim Rule provides:

> Ballast water . . . can be taken onto a ship in its port of origin and discharged into the water body of the ship's destination port, making it a potential pathway for VHS virus.  APHIS has neither the regulatory authority nor the technical expertise to safely regulate ballast water discharge.  Therefore, we do not address ballast water in this interim rule.  APHIS will assist the U.S. Coast Guard, which has clear regulatory authority for ballast water, in their development of ballast water discharge standards.

73 Fed. Reg. 52175.

While plaintiffs may disagree with APHIS, there is no federal statute which compels APHIS to adopt plaintiffs' interpretation, nor does the Court discern any limitation on APHIS's discretion.  Therefore, the Court finds no law for this Court to apply in assessing APHIS's exercise of discretion.

Again, the APA and Heckler bar this Court's review.  Count III must be dismissed for lack of subject matter jurisdiction.

B.  Standing

Defendants deny plaintiffs' standing to pursue this action.  Standing has three elements.  To survive a motion to dismiss, plaintiffs must allege they (1) suffered an "injury in fact" which

11

is (2) "fairly traceable to the challenged action of the defendant," such that (3) the injury will be "redressed by a favorable decision." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).  In considering whether plaintiffs have adequately alleged standing, the Court accepts as true all material allegations of the complaint. <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975).

These plaintiffs are associations.  An association may assert claims on behalf of its members if (1) the members would have standing to sue in their own right; (2) the association seeks to protect interests that are "germane" to its purpose; and (3) the lawsuit makes claims and seeks relief which do not require the participation of individual members.  <u>Hunt v. Washington State Apple Advertising Comm'n</u>, 432 U.S. 333, 343 (1977).  The Court considers whether individual members of the plaintiff associations possess such standing.

An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560.

On this point, the complaint alleges:

Plaintiffs and their members regularly use and enjoy the fish, wildlife, water, and other natural resources of the waters of the United States, including but not limited to the Lake Superior basin area, for a variety of recreational, aesthetic, educational, and scientific purposes, including, but not limited to, boating,

12

> fishing, swimming, wildlife observation, interpretative
> field trips, photography, nature study, and aesthetic
> appreciation.   Plaintiffs and their members intend to
> continue to do all of the foregoing on an ongoing basis
> in the future and thereby do and will continue to derive
> recreational, aesthetic, scientific, educational,
> conservational, and economic benefits from the natural
> resources of these aquatic ecosystems.

(Compl. ¶ 13.)   Three individual members have also submitted
affidavits, specifying the myriad ways they use and enjoy the
waters of Lake Superior.   At least two individuals have personally
observed and attempted to remediate the presence of different
invasive aquatic species in Lake Superior.

While the Court cannot gainsay plaintiffs' and the
individuals' care and concern for Lake Superior, the Court
questions whether the particular concern underlying this complaint
is "concrete and particularized," as opposed to "conjectural and
hypothetical."   Plaintiffs are not concerned about VHSV's presence
in Lake Superior and its fish population.   They are concerned the
lake might become infected with the virus in the future.   To date,
there is no evidence VHSV is in Lake Superior as opposed to the
other Great Lakes.

The complete absence of VHSV in Lake Superior is a very good
thing for the Lake's waters and its resident fish.   Indeed, it is
a good thing for people who care for the Lake and its inhabitants –
but it is a bad thing for plaintiffs' standing.   Absent VHSV, there
is no actual harm.   And absent actual harm, plaintiffs must allege
imminent harm.   <u>Lujan</u>, 504 U.S. at 564.   Fatal to their claim, they

have failed to do so.

Plaintiffs' memorandum points to other invasive species which have spread into Lake Superior.  They note the presence of the round goby, an invasive fish species susceptible to VHSV, now present in Lake Superior.  It appears most likely that ballast water provided the mechanism of introduction.  Plaintiffs cite APHIS's own acknowledgment of ballast water as a "potential pathway" for VHSV.  (Pl. Mem. at 4.)  They argue "there is every reason to expect that VHSV will be transported through ballast water" into Lake Superior.  (Id.)  All of this may be true.  But it is not sufficient to allege an injury in fact.

In essence, plaintiffs claim defendants' enforcement actions are inadequate to keep live fish - and therefore, VHSV - out of ballast water dumped in Lake Superior.  Yet everyone agrees there is no VHSV in the Lake.  This is even more remarkable, considering a typical oceangoing vessel, traveling inbound through the Great Lakes, takes on ballast water in the lower Great Lakes and discharges it into Lake Superior when loading cargo at Duluth-Superior.[7]

---

[7] See National Research Council, Great Lakes Shipping, Trade, and Aquatic Invasive Species, Report Brief at 3, available at http://www.greatlakes-seaway.com/en/environment/ballast-water/index.html#Report (summarizing report by National Academy of Sciences' Committee on the St. Lawrence Seaway: Options to Eliminate Introduction of Nonindigenous Species into the Great Lakes, Phase 2).

The Court is constrained to speculate that the Lake's success in remaining uninfected may be a matter of pure chance; it might be because of an unknown antiviral component in its waters; it is even conceivable its success can be attributed to the very failure to act of which plaintiffs complain.  Plaintiffs' complaint alleges absolutely no facts touching this not-at-all trivial question.

Absent any such allegation, plaintiffs ask the Court to invoke its powers based on the pure conjecture that their theories might, perhaps, be accurate.  This is a slender reed, indeed.  At this stage, the Court concludes, the dire prospect posed by plaintiffs – positing that defendants' failure to follow plaintiffs' suggested regimen will ultimately foster the spread of VHSV into Lake Superior – is purely "conjectural and hypothetical."  There is no injury in fact, and it is possible none will occur.  The individual members do not have standing, therefore neither do the plaintiff associations who bring this suit on their behalf.

III.  <u>Conclusion</u>

For the foregoing reasons, defendants' motion to dismiss [Docket No. 12] is granted.  Plaintiffs' complaint is hereby dismissed for lack of subject matter jurisdiction and lack of standing.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 12, 2009


s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States District Judge